**Peter Fortune, Appellee, v. James F. Cassidy and Lawrence Hickey, Appellants.**

**Gen. No. 13,959.**

1. CREDITORS' BILLS—*when conveyance in fraud of creditors.* Held, under the evidence in this case, that the conveyances attacked were fraudulent as against creditors existing at the time of the making thereof, and likewise as to creditors becoming subrogated to the rights of such existing creditors.

2. SUBROGATION—*when doctrine of, applies to sustain creditor's bill.* A complainant may maintain a creditor's bill to set aside a conveyance as fraudulent and subject it to the payment of a debt due him by reason of his becoming surety upon a bond covering a

contingent liability which existed at the time of the conveyance but which became absolute and was discharged by such complainant after the conveyance had been made.

Creditor's bill. Appeal from the Circuit Court of Cook county; the Hon. L. HONORE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Affirmed. Opinion filed April 17, 1908.

**Statement by the Court.** On May 24, 1905, appellee, Peter Fortune, filed in the Circuit Court of Cook county his bill of complaint, in which he alleged that on December 13, 1904, in the Circuit Court of Cook county, he recovered a judgment against one Cornelius Hickey, the principal defendant named in the bill, for the sum of $2,812.62 and costs; that execution had been issued upon said judgment and delivered to the sheriff of Cook county, and by him returned on March 16, 1905, "No part satisfied."

The bill further alleges that said judgment remains in full force, unreversed and unsatisfied; that the bill is not exhibited in collusion with any person or persons for the protection of Cornelius Hickey from other creditors, but for the sole purpose of compelling payment of said judgment.

The bill further alleges that on April 26, 1893, Cornelius Hickey, with Katherine McGuire and Patrick O'Toole, executed and delivered their replevin bond in the sum of five thousand dollars, payable to the sheriff of Cook county, Illinois, and that default having been made in the conditions of said bond, on April 22, 1896, suit was brought thereon in the Circuit Court of Cook county, by James H. Gilbert, sheriff, for the use of Kate McGuire, administratrix, against Cornelius Hickey, Katherine McGuire and Patrick O'Toole, and judgment rendered against them on February 23, 1898, for the sum of $2,030; that an appeal was taken by said defendants to the Appellate Court in and for the First District of Illinois, and an appeal bond was executed by said defendants, with complainant, Peter

Fortune, as surety; that said bond was executed December 5, 1898, in the penal sum of $4,100, and approved on December 13, 1898; that subsequently said judgment was affirmed by the Appellate Court and that complainant as surety on said bond paid judgment, and brought suit and recovered judgment against said Cornelius Hickey; that at the time he signed the replevin bond above mentioned the said Cornelius Hickey was the owner of certain real estate, and that after said Hickey signed said replevin bond and after suit had been brought thereon, but long prior to the rendition of the judgment in favor of complainant against said Cornelius Hickey, the latter, on February 6, 1896, by warranty deed, made a pretended conveyance of lot 1 to Kate Hayes; that said Kate Hayes, by warranty deed, dated July 24, 1899, and recorded March 30, 1901, made a pretended conveyance of said lot to one Bridget Drislain; that on December 10, 1904, said Bridget Drislain, by warranty deed, recorded December 13, 1904, made a pretended conveyance to Thomas Carey.

The bill further alleges that on February 1, 1896, the said Cornelius Hickey, by deed recorded May 2, 1896, made a pretended conveyance of the north half of lot 17 to said Kate Hayes; that by deed dated July 24, 1899, and recorded October 16, 1901, the said Kate Hayes made a pretended conveyance of said north half of lot 17 to said Bridget Drislain; and on December 12, 1904, by deed recorded December 16, 1904, the said Bridget Drislain made a pretended conveyance of said north half of lot 17 to James F. Cassidy.

The bill further alleges that by warranty deed, dated February 1, 1896, and recorded May 2, 1896, the said Cornelius Hickey made a pretended conveyance of lot 25 to Kate Hayes.

Excepting Bridget Drislain, the bill makes all of the above named parties defendants and alleges that the said Cornelius Hickey, realizing his liability on said replevin bond and that he would thereafter probably become indebted to other parties by virtue of having

become liable on said replevin bond, immediately conveyed all his real estate aforesaid, with the intention of defrauding complainant or any other person to whom he was then or might thereafter become indebted by reason of his having executed said replevin bond.

By amendment to the bill, filed March 13, 1906, one Lawrence Hickey is made party defendant, and it is alleged that he pretends to be in possession of an unrecorded deed by which the said Kate Hayes conveyed and transferred to said Lawrence Hickey lot 25 in block 1 of C. B. Orvis' subdivision of the northeast ¼ of the southeast ¼ of section 7, township 38 north, range 14 east of the 3rd principal meridian, which is the lot referred to as lot 25 in the original bill.

The several defendants, Thomas Carey, Cornelius Hickey, Kate Hayes, James F. Cassidy, and Lawrence Hickey, by separate answers, put complainant to strict proof of the allegations of his bill.

The bill, in connection with the allegations as to the real estate owned by Cornelius Hickey previous to the rendition of the judgment upon which the bill is founded and subsequent to the time when the said Hickey became liable upon the replevin bond, described three separate pieces of real estate as follows:

1. Lot 1 in block 13 in Dr. Snowden's subdivision of the west ½ of the northwest ¼ of section 17, township 38 north, range 14 east of the 3rd principal meridian.

2. The north ½ of lot 17 in block 13 in Dr. Snowden's subdivision of the west ½ of the northwest ¼ of section 17, township 38 north, range 14 east of the 3rd principal meridian.

3. Lot 25 in block 1, in C. B. Orvis' subdivision of the northeast ¼ of the southeast ¼ of section 7, township 38 north, range 14 east of the 3rd principal meridian.

The bill alleges that the various conveyances to Kate Hayes and the conveyances by her to Bridget Drislain and Lawrence Hickey and the conveyance by Bridget

Drislain to Thomas Carey and to James F. Cassidy
were without consideration and fraudulent and void.

The issues presented by the bill and the several
answers thereto were referred to a master in chancery,
who heard the evidence, transcribed and returned the
same to court, accompanied by findings of fact and con-
clusions of law.

The master's report found against the complainant
as to all of the defendants except Lawrence Hickey, and
as to all of the real estate except that part alleged to
have been conveyed to him by Kate Hayes, namely:
lot 25 above described.

Complainant filed objections to the master's report,
questioning the finding and conclusion of the master as
to James F. Cassidy and the north ½ of lot 17, but did
not question the finding and conclusion of the master as
to Thomas Carey and lot 1.

Lawrence Hickey filed objections to the master's re-
port questioning the findings and conclusions as to him
and lot 25. All of these objections were overruled be-
fore the master; and upon order of court stood as ex-
ceptions to said report before the chancellor.

The court by its decree found all the material allega-
tions of the bill as to Cornelius Hickey, Kate Hayes
and Lawrence Hickey to be true; that Cornelius Hickey
on April 26, 1893, with two other parties, executed a
bond for $5,000 for the plaintiff in a replevin suit; that
the plaintiff was defeated in said case, and an action was
brought upon said replevin bond in the Circuit Court
of Cook county against Cornelius Hickey and the other
obligors, and judgment was entered February 23, 1898,
on said bond for $2,030. An appeal was taken from said
judgment to the Appellate Court and an appeal bond
was executed by Cornelius Hickey and his co-obligors,
with complainant, Peter Fortune, as surety. The judg-
ment was affirmed by the Appellate Court and by the
Supreme Court. Suit was brought upon said last men-
tioned bond against complainant and Cornelius Hickey
and judgment was recovered against them and was paid

by the complainant, who thereupon brought suit against Cornelius Hickey to recover, and in that suit he did recover a judgment in the Circuit Court of Cook county November 13, 1904, for the amount so paid by him upon said judgment, namely, $2,812.62, and an execution was issued thereon to the sheriff and was returned by him *nulla bona* on March 16, 1905. Said judgment was not appealed from or reversed, and has not been paid, and is in full force and effect.

The decree further finds that long before the rendition of the judgment last mentioned, and before complainant signed the appeal bond with Cornelius Hickey, but subsequent to the time when said Cornelius Hickey became liable on said replevin bond, Cornelius Hickey was the owner in fee simple of the following described real estate, to-wit: The north half of lot 17 in block 13 in Dr. Snowden's subdivision of the W. ½ of the N. W. ¼ of section 17, township 38 N., range 14 east of the third principal meridian; also lot 25 in block 1 in C. B. Orvis' subdivision of the N. E. ¼ of S. E. ¼ of section 7, township 38 north, range 14 east of the third principal meridian.

The decree finds that after said Hickey became liable on said replevin bond, but prior to the rendition of the judgment last aforesaid, said Cornelius Hickey by warranty deed dated February 1, 1896, and recorded May 2, 1896, in the recorder's office of Cook county, made a pretended conveyance in fee of the north half of lot 17 aforesaid to the defendant, Kate Hayes; and Kate Hayes, by warranty deed dated July 24, 1899, and recorded October 16, 1901, made a pretended conveyance thereof to Bridget Drislain who made a pretended conveyance thereof to defendant James F. Cassidy by warranty deed dated December 12, 1904, and recorded December 16, 1904.

The decree further finds that by a warranty deed dated February 1, 1896, and recorded May 2, 1896, Cornelius Hickey made a pretended conveyance in fee of said lot 25 to Kate Hayes, who made a pretended

conveyance thereof to Lawrence Hickey by a deed which was not recorded at the time the bill was filed, but was subsequently recorded.

The decree then finds that all said conveyances were without consideration, were colorable, and fraudulent, and were intended by said Cornelius Hickey, Bridget Drislain and Kate Hayes, Lawrence Hickey and James F. Cassidy, as a means of enabling Cornelius Hickey fraudulently to prevent said pieces of land from being taken in satisfaction of any debt which said Hickey might be owing at the time of the conveyances made by him, and especially to defraud any one to whom he might be liable by reason of his signature to said replevin bond; that Cassidy had knowledge of the fraudulent character of the said various conveyances, and whether or not he paid to Bridget Drislain a valuable consideration for the said property, he acquired no title thereto which he can assert against complainant; that while the legal title to said properties is in Lawrence Hickey and Cassidy, said properties are subject to the claim of the complainant.

The decree then adjudges that all said conveyances be vacated and set aside as against the complainant and the lien of his said judgment and that the defendants pay all the costs. The exceptions of the defendants to the master's report are overruled, and the exceptions of the complainant thereto are sustained and in all other respects the master's report is confirmed. The bill is dismissed as to the defendant Thomas Carey without costs.

C. A. WILLIAMS, for appellants.

W. S. JOHNSON, M. H. HOEY and ZACH HOFHEIMER, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

It is contended on behalf of appellants that the evi-

dence fails to support the essential findings of the decree, and does not warrant the relief given by the decree.

It appears from the evidence that in the month of April, 1896, a suit was brought in the Circuit Court of Cook county, Illinois, by James H. Gilbert, sheriff, for the use of Kate McGuire, administratrix, etc., on a replevin bond against the principal defendant, Cornelius Hickey, and others who had signed the bond with him, and in that action a judgment was rendered against Cornelius Hickey and his co-obligors in February, 1898, for $2,030. The record does not show the exact date when the replevin bond was signed, but the evidence warrants the inference that it was signed several years before the above action was brought upon it.

It appears that an appeal was taken from said judgment to this court, and that the bond for such appeal was signed by the principal defendant herein and his co-obligors as principals and by the complainant below as surety. The bond was dated December 5, 1898. The judgment of the Circuit Court was afterwards affirmed by this court, and Fortune, appellee, being liable as surety on the appeal bond to pay the judgment, did in fact pay it.

Having paid the judgment, appellee Fortune brought suit against Cornelius Hickey, the principal defendant, to recover the amount so paid by him, and on December 13, 1904, a judgment was entered in that suit against said Hickey for $2,812.62 and costs of suit. Execution was issued thereon and was in due time returned unsatisfied, and that said judgment remains in full force and effect and wholly unpaid.

The evidence shows, in our opinion, that Cornelius Hickey formed the intention prior to February, 1896, of putting his property in the name of other persons for the purpose of avoiding the payment of any judgment that might be recovered against him and others on the replevin bond; and later, after suit had been

instituted on the bond as stated above, and in the month of April, Hickey expressed such intention. Unless the conveyances hereinafter referred to were made subsequently to such expression of his intention and dated back, he had in February, 1896, when he was liable on the bond, executed a warranty deed of lot one, in block thirteen, in Dr. Snowden's subdivision described in the bill to Kate Hayes, a sister of his wife. He had also on February 1, 1896, executed the deed conveying the north half of lot seventeen, in block thirteen in the same subdivision, to Kate Hayes; and on the same day he executed a third deed of lot twenty-five, in block one, in C. B. Orvis' subdivision, described in the bill, to said Kate Hayes. All these transfers were made at the same time, and without any of the circumstances attending them which usually and necessarily accompany the *bona fide* sale and purchase of real estate in the ordinary course of business. The deeds of said lots were not recorded until May 2, 1896. On July 24, 1899, Kate Hayes executed separate deeds of said lot one, and the north half of lot 17, to one Bridget Drislain, a niece of Cornelius Hickey. The deed of lot 1 was not recorded until March 30, 1901, and the deed of a part of lot 17 was not recorded until October 16, 1901.

It appears, we think, from the evidence that neither Kate Hayes nor Bridget Drislain had any money with which to purchase the property so conveyed to them, and that they did not pay any consideration for the properties, and that the conveyances were all made without consideration and for the fraudulent purpose charged in the bill.

It further appears from the evidence that Bridget Drislain, on December 12, 1904, the day before the judgment against Cornelius Hickey was recorded by appellee Fortune, conveyed the said north half of lot seventeen to appellant James Cassidy, and the deed was recorded December 16, 1904, three days after the recovery of said judgment. While appellant Cassidy

swears that he paid Bridget Drislain $2,000 in cash when she delivered him the deed, we think it is exceedingly doubtful that such payment was in fact made. But whether the payment was in fact made or not, the evidence as to Cassidy's previous relations with the principal defendant in the bill, Hickey, and with Kate Hayes and Bridget Drislain, and that he acted for all of them in these transactions, shows that appellant Cassidy had notice, at the time of his purchase from Bridget Drislain, that the transfers from Hickey to defendant Hayes and from the latter to Bridget Drislain were fraudulent and made with the intent to prevent the property from being taken in execution for the debt of the defendant Hickey.

It appears that Kate Hayes some time after May 2, 1896, conveyed said lot twenty-five to Lawrence Hickey, a son of Cornelius Hickey. The master and the chancellor found from the evidence that this transfer was also fraudulent and was made as a part of the scheme or plan to prevent the lot from being levied upon for the debt of the principal defendant, Hickey. In this conclusion we concur.

The decree dismissed the bill as to the defendant, Thomas Carey, and as no cross-errors are assigned on that part of the decree, the validity of the deed to Carey is not before us.

It is urged, however, that the judgment upon which the bill is based was rendered December 13, 1904, nearly nine years after the transfers of the real estate by Cornelius Hickey to Kate Hayes, and that the transfers were made nearly three years before appellee Fortune signed the appeal bond, under which he afterwards paid the judgment against Hickey; and appellee Fortune was not a creditor of Hickey at the time of the conveyances, and could not at the time he became surety on the appeal bond have relied upon the ownership of the property in question by Cornelius Hickey; and these facts show that it is impossible that Hickey could have intended to defraud For-

tune by the conveyances or to obstruct him in the collection of any just debt, and therefore the decree should be reversed.

This contention is too narrow in its premises to be sound. It is to be observed that the debt for which the appellee Fortune recovered the judgment upon which his bill is based arose directly out of the original liability on the replevin bond which was executed before the original transfers of the real estate by Hickey to Hayes were made. By signing the appeal bond as surety, Fortune made himself responsible for the payment of this original liability in case the judgment therefor was affirmed. When the judgment was affirmed, he paid it, and by that fact became subrogated to all the rights and equities of the owner of the indebtedness, and stood in the shoes of the original creditor as regards the right to have the conveyances set aside, if fraudulent and colorable as to such original creditor. This right of subrogation is an established principle of equity, and is stated in Eddy v. Traver, 6 Paige 521, quoted in Lochenmeyer et al. v. Fogarty et al., 112 Ill. 572, at page 583, as follows: "It is an established principle of equity that sureties, or those who stand in the situation of sureties for those who pay a debt for them, are entitled to stand in the place of the creditor, or to be subrogated to all his rights as to any fund, lien or equity which he may have against any other person or property on account of the debt." As said in 1 Leading Cases in Equity, page 144: "Moreover, as soon as the surety has paid the debt an equity arises in his favor to have all the securities, original and collateral, which the creditor holds against the person or property of the principal debtor, transferred to him, and to avail himself of them as fully as the creditor could have done. For the purpose of obtaining indemnity from the principal, he is considered as at once subrogated to all the rights, remedies and securities of the creditor—as substituted in the place of the creditor, and to enforce

all his liens, priorities and means of payment, as against the principal, and to have the benefit even of securities that were given without his knowledge." This doctrine is held in numerous cases in the courts of this state.

In our opinion, the evidence in the record justifies the inference that Cornelius Hickey was the owner of the property described in the conveyances in question when he signed the replevin bond, and that he executed the conveyances of the property after he became liable on the bond as alleged in the bill of complaint; and that the conveyances are all tarred with the brush of fraud, and appellee is entitled to the relief given him by the decree.

The decree is affirmed.

*Affirmed.*